FREDERICK S. PEARSON, Respondent, *v.* EDWARD B. CUTHBERT and FRANCIS L. CUTHBERT, as Administrators of the Estate of OPHELIA J. CUTHBERT, Deceased, Appellants, Impleaded with Others.

*Advance of money by a mother to her son — when it is chargeable against his ultimate share in her estate and does not constitute a loan.*

A son applied to his mother for money with which to embark in business in Wall street, which the mother expressed an unwillingness to supply. The son then said, "You are getting along in years and you are not likely to live very long in the natural course of events and I don't want you to put your money in there, but if you will let me have some money on my own account, that is, loan it to me, I will take it as a loan, and if I lose it, at your death it can go as a charge against me, and that will certainly save you any loss — your estate any loss," to which the mother replied, "Well, I will lend you some of it, but, mind you, if it is lost it must be a charge against you, but, if you make any money, I want it paid back to me out of the very first money you make, because I don't want to have anything to do with that business."

The son went into business with money advanced by his mother and became insolvent before the death of his mother. The books of the business contained no record that he had borrowed from, or was indebted to, his mother in any sum whatever, and she had no written evidence that he was indebted to her.

*Held,* that the advance having been made with the understanding that it was not to be repaid unless profits were made out of the business, in default of which it was to be deducted from the son's share of the mother's estate, that the son had no power to reimburse his mother for the advance thus made with moneys withdrawn from the assets of the business to the detriment of his creditors.

Van Brunt, P. J., dissented.

Appeal by the defendants, Edward B. Cuthbert and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of February, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*Milton Hopkins,* for the appellants.

*Howard A. Taylor,* for the respondent.

McLaughlin, J.:

This action was brought by a judgment creditor of Edward B. Cuthbert to set aside certain transfers and a general assignment made by him, upon the ground that the same were made with the intent to hinder, delay and defraud his creditors. The complaint alleged, in substance, that the plaintiff had recovered a judgment against Edward B. Cuthbert for $15,019.71, upon which an execution had been issued and returned wholly unsatisfied; that for some time prior to August 31, 1897, Cuthbert did business in the city of New York as a stockbroker, on which day he made a general assignment to the defendant Ball for the benefit of creditors; that from April, 1897, to the time when the assignment was made, Cuthbert was insolvent, and for the purpose of hindering, delaying and defrauding his creditors he transferred, without consideration, certain property belonging to him to the defendant Ball, William C. Cuthbert and Ophelia J. Cuthbert, which included the transfer of a certain check for $10,000 drawn by him on the 20th of April, 1897, to the order of the defendant Ball, and another check bearing date on that day for $20,000, payable to the order of one Young; that these checks were cashed by the payees named in them, and the

money returned to the defendant Edward B. Cuthbert, and that the same remained in his hands until the 31st of August, 1897, when he delivered it to the defendant William C. Cuthbert; that on the same day that this delivery was made, Edward B. Cuthbert also delivered to the defendant Ophelia J. Cuthbert the sum of $40,000, which sum either remained in her hands or in the hands of William C. Cuthbert. The complaint further alleged that the defendant Edward B. Cuthbert transferred certain real estate to the defendant Ophelia J. Cuthbert for a nominal consideration, and that Edward B. Cuthbert and William C. Cuthbert were brothers, and Ophelia J. Cuthbert was their mother. The judgment demanded was that the defendants Ophelia J. Cuthbert and William C. Cuthbert account to the plaintiff for any and all sums of money, and the value of any and all property transferred to them subsequent to April 1, 1897, by Edward B. Cuthbert, and that they make a discovery concerning the same; that the judgment of the plaintiff, together with the costs of the action, be paid out of such property, and that the general assignment for the benefit of creditors be declared fraudulent and void as against the plaintiff in this action. The defendants by separate answers denied substantially all of the material allegations of the complaint.

Upon the issues thus framed the parties went to trial, at the conclusion of which the trial court found as a fact the recovery of the judgment, the issuance of the execution and the return of the same unsatisfied, as alleged in the complaint; and that

" II. On August 24, 1897, the defendant Edward B. Cuthbert transferred to the defendant William C. Cuthbert, his brother, $18,000, and on August 30, 1897, the defendant Edward B. Cuthbert transferred to the defendant William C. Cuthbert $40,000. Shortly thereafter the $40,000 was transferred by the defendant William C. Cuthbert to Ophelia J. Cuthbert, the mother of the defendants Edward B. Cuthbert and William C. Cuthbert, who, until her death on August 14, 1899, was a defendant in this action.

" III. The transfers aforesaid were each and all of them made with the intent to hinder, delay and defraud the creditors of Edward B. Cuthbert, including this plaintiff. Such was the actual intent of the defendants Edward B. Cuthbert and William C. Cuthbert. Ophelia J. Cuthbert had nothing personally to do with the matter,

the transactions being arranged for her and entirely carried out by the aforesaid defendants in her behalf."

The trial court also found that the general assignment for the benefit of creditors was made with intent to hinder, delay and defraud creditors, and that intermediate the commencement of this action and its determination, a decree of this court had been made adjudging that such assignment for that reason was void, and appointing one David J. Lees receiver of the assets of the property fraudulently transferred. It also found that after this action had been commenced and issue joined therein, the defendant Ophelia J. Cuthbert had died, and that Francis L. Cuthbert had been appointed the sole administrator of her estate; that he had been substituted in this action for her and the action had been continued against him.

And as a conclusion of law the court held that the transfers of the $18,000 and of the $40,000 were void as against the plaintiff, and also as against the receiver Lees; that the general assignment was also void, and that that the defendant Ball had no interest in or title to the subject-matter involved in this action; that for the purpose of satisfying the plaintiff's judgment. William C. Cuthbert should account to the plaintiff or the receiver for the moneys fraudulently transferred to him and make a discovery concerning the same; that the liability of Ophelia J. Cuthbert to satisfy the plaintiff's claim out of the $40,000 fraudulently transferred to her had, by reason of her death, devolved upon her administrator; that the plaintiff had an equitable lien upon the property in the hands of the administrator so far as it became necessary to satisfy the claim set out in the complaint, and for the purpose of satisfying such claim the administrator was directed to account either to the plaintiff or to the receiver appointed in the action brought to set aside the assignment.

Upon this decision judgment was thereafter entered, which, among other things, decreed that " the defendant William C. Cuthbert, personally, and the defendant Francis L. Cuthbert, as administrator of the estate of Ophelia J. Cuthbert, deceased, are directed and required to pay forthwith to David J. Lees, as receiver aforementioned, fifteen thousand nineteen and 71/100 dollars ($15,019.71), with interest from December 20, 1897, to date of payment, together with the receiver's expenses and commissions in collecting the same,

to be hereafter adjusted, either at the foot of this decree or of the decree appointing the receiver and the costs of this action, amounting to six hundred and thirty-nine dollars and seventy-five cents ($639.75)." From this judgment all of the defendants have appealed.

From the record before us it appears that Ophelia J. Cuthbert, the mother of the defendants, Edward B. and William C. Cuthbert, inherited from her father, Francis W. Lasak, who died in 1889, upwards of $300,000, nearly all of which was paid to the defendant Edward B. Cuthbert for her; that in October, 1894, Edward B. Cuthbert and three other persons formed a copartnership under the firm name of E. B. Cuthbert & Co., for the purpose of doing business in the city of New York as stockbrokers; that in or prior to April, 1897, all of the persons having an interest in the copartnership withdrew, except Edward B. Cuthbert, who thereafter continued as the sole surviving member; that when this copartnership was formed Edward B. contributed to the capital of the firm (and this was substantially all the capital contributed by any one) $100,000, which sum, according to the testimony, and it is not disputed, he obtained, at least to the extent of $95,000, from his mother, Ophelia J. Cuthbert; that he did in fact obtain at the time of the formation of the firm at least $95,000 from his mother, does not seem to have been disputed upon the trial, but that it was a loan to him was disputed, and the testimony given by him indicated that it was not in fact a loan, at least in such a sense that he could have been compelled to pay it or that his mother could at any time during the existence of the firm have insisted upon payment. He testified, referring to the transaction, as follows: " I told her that I wanted to go in business and that I was getting along in life and I had not been able to do anything; I had been tied to this estate so long, attending to her matters for her, and that I had a proposition to start a business in Wall street. She threw her hands up in the air and she said: 'That is just the way my money is going to go if I let you have anything. I won't have anything to do with Wall street. I have always heard just what that Wall street is, and I have always been warned against it by my father, especially, and I know if he was living he would not allow you to have a cent for you to go down in Wall street.' Well, I told her, I said, ' mother, you

are getting along in years, and you are not likely to live very long in the natural course of events, and I don't want you to put your money in there, but if you will let me have some money on my own account; that is, loan it to me, I will take it as a loan, and if I lose it, at your death it can go as a charge against me, and that will certainly save you any loss — your estate any loss.' She said, ' Well, I will lend you some of it, but, mind you, if it is lost, it must be a charge against you ; but, if you make any money, I want it paid back to me out of the very first money you make, because I don't want to have anything to do with that business,' and upon those terms she let me have the money."

From this testimony, which was not disputed or contradicted in any way, it appears that Edward B. was not to become liable to his mother for the amount advanced by her, unless he succeeded in making that amount out of the firm, and if he did not make it, then the amount advanced was, upon her death, to be deducted from the share or interest in her estate to which he would be entitled. Under such circumstances, we do not think that he could, for the purpose of reimbursing his mother for the advance thus made, withdraw from his assets, to the detriment of his creditors, money to pay such advance or any part of it. The terms and conditions upon which the advance was made were that the same was to be repaid to her out of the profits of the business ; and if profits were not made, then upon her death it was to be made a charge against him. Had she died prior to his failure, no one would seriously contend that in the settlement of her estate the amount of this advance, under the agreement, could not be deducted from his share or interest. Any other view of the transaction would be that Edward B. took no risk of the business so far as the capital invested by him was concerned, but that the risk was wholly upon his creditors. If the venture were a failure, he could immediately withdraw from the assets of his firm a sum sufficient to reimburse his mother for the capital which he had invested, and in such reimbursement it is only fair to assume he supposed that he would ultimately participate. That this view of the transaction is a fair criticism of it, based upon the testimony of Edward B. Cuthbert, is further sustained by the fact that no record whatever was made in the books of the firm of Edward B. Cuthbert

& Co., or in any books kept by Edward B. Cuthbert, that he had
borrowed from or was indebted to his mother in any sum whatever,
and also by the fact that she had no written evidence, so far as
appears, that he was indebted to her. If he did, in fact, *borrow*
from, with the expectation that he was to pay to, his mother the
$95,000 mentioned, it is indeed strange that there does not appear
an entry upon his books or upon the books of his firm of a credit
to her of this sum, or that she did not have anything to show that
he acknowledged such indebtedness to her. It is true that in this
connection he testified that it was a personal loan to him, in order
that he might contribute that amount to the capital of the firm, but
this explanation loses its force when it is considered in connection
with the balance of his testimony, as well as that of the other wit-
nesses. He further testified that on April 26, 1895, he received
from his mother $73,692.25, and that it was agreed between him
and her that this should be a loan to the firm of E. B. Cuthbert &
Co., upon which five per cent interest should be paid. He said:
" I had a conversation with her when she deposited $73,000 with
my firm in 1895, and it was credited to her as a creditor of the firm. I
told her that we would like to borrow it from her and I would pay her
the same interest as she got anywhere else." That she did in fact loan
the firm this sum at the time stated seems to have been established
by entries in its books. There appears an entry under the head of
" Mrs. O. J. Cuthbert Estate " by which that estate was credited on
April twenty-sixth with " Cash, $73,692.25." This account was con-
tinued from the date of its entry to the time the general assignment
was made, and interest upon the amount advanced at the rate of five
per cent was added to it from time to time. But that the entries made
in this account were not a correct statement as to the liability of the
firm to Ophelia J. Cuthbert, or to the estate of Mrs. O. J. Cuthbert,
appears from other entries in the books. An entry in the books,
under date of July 10, 1896, shows a credit to Ophelia J. Cuthbert
" By E. B. C. Special Capital %, $71,842.73," which is clearly
erroneous and fictitious. This entry, unexplained, indicates that
Ophelia J. Cuthbert, on July 10, 1896, advanced to the firm of E.
B. Cuthbert & Co. the sum of $71,842.73, for which sum the firm
then became indebted to her. But this is not, in fact, true. In

relation to this entry the defendant E. B. Cuthbert testified that in 1895–96 his firm made in profits $77,683.35, in which his interest was $69,138.19, which was entered in the books of the firm first as a credit in the account headed " E. B. Cuthbert Expense Account," and then the item was arbitrarily increased to $71,842.73, and entered on the debit side of the E. B. Cuthbert special capital account, thus making it appear that he had in fact paid out, on that day, $71,842.73. This item was then transferred to the credit side of Mrs. O. J. Cuthbert's estate account, thus making it appear that Mrs. Cuthbert had advanced it and that the firm was indebted to her in that sum. She did not at this time receive any part of this item, nor did she contribute one cent of it to the firm. When E. B. Cuthbert was called upon to explain how this entry came to be credited to his mother, he testified : " Then, when I made a profit I credited her $71,000 out of my expense account, really represented my personal account; that $71,000 coupled with the item of $73,000, first put in, and some interest charged upon that, made up precisely $150,000.  *  *  *  It was a great deal easier to account for the even $150,000 and say there is an even $150,000 in the start." In other words, it seems that E. B. Cuthbert wanted the books of his firm to show that the firm was indebted to his mother in the sum of $150,000, and in order to do this he added to the amount which she had actually loaned to them a sum sufficient to make $150,000, and made the proper entries in their books for this purpose. By reason of this false and fictitious entry the books of the firm of E. B. Cuthbert & Co., at the beginning of the year 1897, showed that the firm was indebted to Ophelia J. Cuthbert, or to the O. J. Cuthbert estate, in the sum of at least $125,000 ; $25,000, according to an entry appearing therein, having been paid to her on December 17, 1896.

In connection with these fictitious entries it is interesting at least to examine in detail some of the entries in the books of the firm of E. B. Cuthbert & Co., in the account headed " Mrs. O. J. Cuthbert Estate." By these entries it appears that on July 1, 1896, the firm was actually indebted to Mrs. Cuthbert, for money advanced, with interest (not, however, including the $95,000 advanced to E. B. when the firm was formed), in the sum of $78,157.27. The next interest item that appears in this account is

under date of December 31, 1896, and is for interest to that date, which, according to the entry, amounted to $2,701.39. This appears upon both the credit and debit side, from which, in the absence of explanation, it would be proper to infer that that amount was then paid to her, but interest was calculated not only upon the $73,692.25 which she had advanced to the firm, but also on the $71,842.73 fictitiously credited to her account. On December 17, 1896, on the debit side of the account appears an item, "to W. C. Cuthbert, $25,000." No explanation is made of this entry so far as we have been able to observe, and it would seem to indicate that there had been paid to W. C. Cuthbert for the mother on that day $25,000; and if this be true, which cannot upon this proof be determined, and that amount be deducted from the sum then actually due her, it would leave to her credit, as of January 1, 1897, the sum of $53,157.27 instead of $125,000, as appears upon the face of the account. On February 17, 1897, an entry is made as to certain United States four per cent bonds, as to which there is both a debit and credit, so that the transaction in relation to them in no way affects the accounts between her and the firm. On April 15, 1897, an entry is made on the debit side of the account by which she is charged, "Jan. 14, W. C. Cuthbert, $23,184.72;" and if this be true, which cannot upon this proof be determined, this amount should be deducted. Deducting this item leaves a balance due her as of April 15, 1897, of $29,972.55; and on the same date another entry appears, "Apr. 13, F. L. do. $16,807.86," which upon proof that it is a proper charge should be deducted from the balance due her of April 15, 1897; and this would leave the firm indebted to her at that date in the sum of $13,164.69. It is conceded that on the 31st of August, 1897, a check was drawn by E. B. Cuthbert, payable to the order of William C. Cuthbert, for $40,000, and that the money obtained on the check was actually paid to the mother. The amount of the actual indebtedness cannot be determined upon this evidence, but must be determined by the referee upon an accounting; but if it be true that E. B. Cuthbert, or the firm of E. B. Cuthbert & Co., was on that day indebted to her in the sum of $13,164.69, then E. B. Cuthbert had the right to pay her that sum or such other sum as was actually due, and such payment could not in law be held to have been made with intent to

hinder, delay and defraud creditors. There is nothing to prevent a debtor, prior to the time a general assignment is made, from paying one creditor in preference to another. E. B. Cuthbert had the legal right to pay to his mother the sum which she had advanced to him or his firm, and which he was at the time of such payment legally obligated to pay to her. This, of course, does not apply to the $95,000 originally advanced by her for the purpose of enabling him to go into business; because, as already indicated in this opinion, that sum was advanced with the understanding that it was not to be repaid unless profits were made to that extent, in default of which it was simply to be a charge against E. B. Cuthbert upon a final settlement or distribution of the estate of Ophelia J. Cuthbert.

There is no doubt but that Ophelia J. Cuthbert received the proceeds of the check drawn on the 31st of August, 1897. She was entitled, however, only to so much of it as was sufficient to satisfy and discharge in full the money which she had advanced to the firm, together with interest to the date of payment. Just what that amount was does not clearly appear in this record, and must be determined by the referee on the accounting. All over and above this amount was a payment without consideration; and it must be held to that extent to have been made to hinder, delay and defraud creditors. The explanation given by Edward B. Cuthbert as to how this check came to be given is as follows: "At the time I gave W. C. Cuthbert the check of $40,000, our conversation was substantially as follows: He came into my office and he said I was in a very weak condition; that I had mother's money there and that acting under instructions from her he called to make a demand on me for her money. He said, 'to make a formal demand on you for her money.' I told him, well, if that's the case, I would have to pay him. I then gave him a check. * * * I cannot say on what account that $40,000 was paid. It was paid on the general account. * * * That was money I owed her."

The judgment, therefore, should have directed that the referee ascertain just what amount was due to Ophelia J. Cuthbert on August 31, 1897, and require her estate to account for the $40,000 received by her, less whatever sum might be found to be due to her from the firm of E. B. Cuthbert & Co. or E. B. Cuthbert, together with interest thereon, not including the $95,000 originally advanced

at the formation of the firm, and to pay the same, or so much thereof as might be necessary to satisfy the plaintiff's claim, together with interest.

This brings us to a consideration of the claim made against William C. Cuthbert. It appears that in April, 1897, the defendant Edward B. Cuthbert drew a check payable to the order of a Mr. Ball, a clerk in the office of E. B. Cuthbert & Co., for $10,000, and this item was charged on the books of the firm to legal expenses. On the same day a check was also drawn payable to the order of a Mr. Young, who then had a small interest in the firm, for $20,000, and the same was charged against his account. These checks were cashed within a few days after the same were drawn by the respective payees, and the cash obtained was delivered to Edward B. Cuthbert, who deposited the same in a safe deposit vault, where it remained until the 24th of August, 1897, on which day the whole amount was turned over to William C. Cuthbert by Edward B. Cuthbert. The explanation given by Edward B. Cuthbert as to this payment was as follows: "The reason I gave my brother William the $30,000 in greenbacks instead of a check on that balance in the bank was, that the balance at that time would not have stood it. The way that was, my brother, W. C., came in and said he had to have some money to put up as he had been called upon for margins on stocks he was carrying for us. He said, ' I have got to have some money. I have got to put this up before three o'clock. * * *' Then I said 'I have $30,000 down in the trust company and I will have to go and get it out;' so I went down there, telling my brother, 'you wait until I come back;' and I went down there and got the $30,000 and brought it back and handed it to him. * * * I simply handed him the money and said, ' Bill, send back to us all you can out of it.' * * * And finally I learnt that he sent back the $12,000."

From a concession made upon the trial, it appears that a payment of $30,000 was in fact made by Edward B. Cuthbert to William C. Cuthbert, as stated in the testimony just quoted, of which William C. Cuthbert retained $18,000, and this is the sum which the trial court found he should account for. From the same concession it appears that there was an account upon the books of the firm of E. B. Cuthbert & Co., headed " W. C. Cuthbert Stock Account;"

that this account showed large transactions between William C. Cuthbert and the firm of E. B. Cuthbert & Co., but that the only item of debit and credit, by reason of a cash payment or check transfer, during August, 1897, is a credit to William C. Cuthbert under date of August twenty-fourth; that this item is, "Check, $12,000, increasing the balance due him by that amount. * * * The cash balance at the end of the account, September 1st, 1897, is $26,507.64 in favor of W. C. Cuthbert." In this account we have fictitious entries of substantially the same character as appear in the account with the mother. Thus, on August twenty-fourth, William is credited with having paid the firm $12,000, whereas he was in fact paid by the firm $30,000; and the only relation that the $12,000 had to the transaction was that he subsequently returned that sum to the firm; and the balance due him, as shown on the face of the account, on the day the return was made, should be reduced $12,000, leaving a balance due him of $14,507.64, instead of $26,507.64. It is conceded that he received $18,000, and if the firm was actually indebted to him in the amount shown by the books (concerning which fact we do not express any opinion), there was an overpayment of nearly $4,000.

It further appeared that in another account in the books of E. B. Cuthbert & Co. A. C. Cuthbert was indebted to the firm in the sum of $3,621.25; and if this sum were added to the overpayment it would then appear that he had received between $7,000 and $8,000 more than he was entitled to, and for which sum he should account to the receiver Lees.

This brings us to a consideration of the judgment rendered. The action, as already said, was for an accounting. It was tried and decided upon that theory. The judgment rendered was in effect a money judgment. It directed William C. Cuthbert personally and the administrator of Ophelia J. Cuthbert to forthwith pay to Lees as receiver $15,019.71, together with interest thereon to the date of payment, including the commissions to the receiver and the costs and disbursements of the action.

We are of the opinion that this was error. We think an accounting should have been ordered and the referee directed to ascertain the amount due to Ophelia J. Cuthbert and to William C. Cuthbert, and that the administrator of the estate of Ophelia J. Cuthbert be

directed to account to the receiver for the $40,000 paid to Ophelia J. Cuthbert on the 30th of August, 1897, together with interest thereon, less the sum in which E. B. Cuthbert was indebted to her, together with interest thereon, as hereinbefore indicated; and W. C. Cuthbert should be directed to account to the receiver for the $18,000 paid to him on the 24th of August, 1897, together with interest thereon, less whatever sum might be found to be due from E. B. Cuthbert to him to the date of such payment.

It follows that the judgment must be modified in accordance with the views herein expressed, with costs to the appellants to abide the event.

PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred; VAN BRUNT, P. J., dissented.

VAN BRUNT, P. J. (dissenting):

I dissent. There is no proof whatever that the money which was loaned by the mother to Edward B. Cuthbert was intended as an advance to him, to be paid only by a charge against his share of his mother's estate. She loaned the money to him at his request, and when she told him that the money would be lost in Wall street if she let him have it, his answer was that her estate would not lose anything, as it might be charged against his share. There was no agreement upon her part not to ask him for the money, and she could have claimed it at any time that she saw fit.

Judgment modified as directed in opinion, with costs to the appellants to abide event.